IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

HONORATO PINEDA-ZUNIGA,

Defendant.

CIVIL ACTION NO.
1:16-CR-00323-LMM-JSA-2

## **ORDER**

This case comes before the Court on the Magistrate Judge's Report and Recommendation ("R&R") [115], recommending that this Court deny Defendant Honorato Pineda-Zuniga's Motions to Suppress [84, 86]. Pursuant to 28 U.S.C. § 636(b)(1), Defendant filed objections to the R&R [126]. The facts and procedural history of this case are set forth in the R&R and are fully incorporated herein by reference.[1] After due consideration, the Court enters the following Order.

### **I.     LEGAL STANDARD**

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate's R&R for clear error if no objections are filed. 28 U.S.C. § 636(b)(1). If a party files

---

[1] As there were no factual objections, the facts as set forth in the R&R are hereby adopted.

objections, however, the district court must determine *de novo* any part of the Magistrate Judge's disposition that is the subject of a proper objection. Id.; Fed. R. Crim. P. 59(b)(3). As Defendant filed objections to the R&R, the Court reviews the Magistrate Judge's findings and recommendations regarding these conclusions on a *de novo* basis. 28 U.S.C. § 636(b)(1).

## II.     DISCUSSION

In the R&R, the Magistrate Judge recommends that the Court deny Defendant's Motions to Suppress evidence resulting from a vehicle stop, in which Defendant was a passenger. Defendant makes three objections to the Magistrate Judge's legal conclusions, each of which the Court will address in turn.

### A.     Intercepts and Surveillance

Defendant first objects to the Magistrate Judge's conclusion that law enforcement intercepts and surveillance provided reasonable and articulable suspicion to support the vehicle stop. Dkt. No. [126] at 1. As the Magistrate Judge recognized, an officer must have reasonable and articulable suspicion in order to stop a vehicle. See Terry v. Ohio, 392 U.S. 1, 21–22 (1968). Reasonable suspicion is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). It must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21. In determining whether there was reasonable suspicion, the Court "look[s] at the 'totality of the circumstances' of each case to

see whether the detaining officer ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002). The officer must have more than just a "hunch of criminal activity." United States v. Perkins, 348 F.3d 965, 970 (11th Cir. 2003) (quotation omitted). In making this determination, the Court must "give due weight to inferences drawn from those facts by . . . local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996).

Defendant argues that the Magistrate Judge should not have relied on law enforcement intercepts because DEA Task Force Officer David Noe, who does not speak Spanish, disregarded the interpreter's translations of these intercepts and instead used his own interpretations to support the vehicle stop. Dkt. No. [126] at 1–3. However, as the Magistrate Judge found, the record contradicts Defendant's argument. Officer Noe's testimony makes clear that he relied on the interpreter's translations. Dkt. No. [109] at 9. Officer Noe also later testified that the interpreters would, in addition to providing direct translations, offer their own thoughts as to what certain code words might mean. See id. at 21–22. Officer Noe stated that he did not rely on those impressions, but instead his own impressions based on his knowledge and experience. Id. The Court thus finds that Defendant's argument is not supported by the record.

Next, Defendant argues that Officer Noe's opinions about what various code words in the intercepts meant were purely speculative, and never clearly discussed criminal activity. Dkt. No. [126] at 3. Defendant also argues that it was

3

arbitrary for Officer Noe to infer that references to "Norato" were short for Honorato, Defendant's first name. Id. The Court finds that, in the context of the entire investigation, Officer Noe's inferences were reasonable. See Dkt. No. [115] at 2–8 (describing the context in which Officer Noe reached his opinions and inferences). For example, Officer Noe opined that "33" was a code word for "money" based off of communications about one of Defendant's alleged co-conspirators needing "33" to rent a house. Id. at 2. Officer Noe then applied his opinion about that code word's meaning to other intercepts. See id. at 5–6. In reaching this finding, the Court gives due weight to Officer Noe's inferences, as it must, based on his extensive training and over 20 years of experience. See Ornelas, 517 U.S. at 699.

Last, Defendant argues that there was not sufficient evidence from the surveillance linking him to the stopped black Cadillac to support a finding of reasonable suspicion. Dkt. No. [126] at 3–5. However, that is not what was required of the law enforcement officers in this case. To the contrary, the officers were required to have reasonable suspicion for the traffic stop as a whole, not to stop Defendant personally. Indeed, the officer who stopped the car testified that when he pulled the car over, he was not even aware Defendant was a passenger. Dkt. No. [109] at 71–72.

In sum, the Court agrees with the Magistrate Judge that there was reasonable and articulable suspicion to support the vehicle stop in this case. As set out by the Magistrate Judge, the investigation's intercepts and surveillance

4

indicated the presence of a drug trafficking operation at addresses where the black Cadillac frequented. The intercepts included coded references to drugs and money, as well as clear expressions of concern about possible police surveillance. Before the traffic stop, the black Cadillac was seen leaving one alleged stash house with another vehicle that was stopped and found with four kilograms of methamphetamines. And immediately before the stop occurred, the black Cadillac was seen being loaded with luggage at a second suspected stash house. The Court finds that based on the totality of these circumstances, the officers had reasonable suspicion to stop the vehicle. As a result, Defendant's objections are **OVERRULED**.

### B. Window Tint as Pretext

Defendant objects that the officer who pulled over the car, Trooper Kent, could not have relied on a perceived window tint violation in stopping the car. See Whren v. United States, 517 U.S. 806, 813 (1996) (holding that subjective intent, including pretext, is not relevant to whether probable cause exists to believe a violation of the law occurred). However, the Court need not reach this issue because it was not relied upon by the Magistrate Judge. The Magistrate Judge expressly refrained from making any finding as to the window tint violation because there was conflicting testimony on the topic, there was no corroboration for the purported violation, and because any finding was not necessary due to the Magistrate Judge's independent finding that there was

reasonable suspicion to stop the car. Dkt. No. [126] at 14 n.4. Defendant's objection is therefore **OVERRULED**.

### C. Officer Noe's Credibility

Defendant's last objection is that Officer Noe's testimony was not credible. Dkt. No. [126] at 8. Specifically, Defendant points out that Officer Noe testified that he could see "just faintly" through the rear window of the car that there was stacked luggage up to the car's ceiling. Dkt. No. [109] at 42. Defendant asserts that this testimony conflicted with Trooper Kent's testimony that "the rear window tint on the vehicle was so dark you couldn't see any of the occupants of the vehicle, you couldn't see silhouettes, you couldn't see the road ahead of them, you could not see anything coming through the back window of the vehicle." Id. at 84. The Magistrate Judge found that this did not create a credibility issue because Officer Noe's testimony that he could "just faintly" make out the luggage did not necessarily contradict Trooper Kent's testimony. Dkt. No. [115] at 14 n.4. The Magistrate Judge pointed out that these statements "may simply represent a different perception, vantage point, or lighting, or that one witness has better eyesight than the other." Id.

The Court agrees with the Magistrate Judge and finds that this is not enough to discredit Officer Noe's testimony. As the Magistrate Judge found, there are simply too many variables that could explain different perceptions of the rear window's visibility, particularly in a situation where Officer Noe stated that he could only "just faintly" make out the bags. Indeed, Officer Noe also explained in

his testimony that he "couldn't see what it was," only that he "could see the outline of bags and some daylight near the top through the front windshield, but that was it." Dkt. No. [109] at 63. On this record, the Court finds there is no basis to discredit Officer Noe's testimony.

Defendant also argues that Officer Noe's testimony was not credible because he told Trooper Kent that there was an outstanding warrant for Defendant's arrest in Gwinnett County despite knowing there was not, in fact, such a warrant. Dkt. No. [126] at 8–9. However, the record does not support Defendant's assertion. After the car was stopped and the identity of the driver and passengers became known to law enforcement, Officer Noe did inform Trooper Kent that the driver had an outstanding federal warrant and that "it was thought" that Defendant had an outstanding warrant in Gwinnett County. Dkt. No. [109] at 96. As Trooper Kent testified, the officers "were under the impression that the warrant was still valid" and only later learned that the warrant had been dropped. Id. at 98. Further, a Gwinnett County detective told Officer Noe over the phone that "he did have charges on [Defendant]" and asked for Defendant to be turned over to the Gwinnett County Police. Id. at 46–47. The Court finds no basis in the record to support Defendant's assertion that Officer Noe lied about an outstanding warrant. As a result, Defendant's objections are **OVERRULED**.

### III. CONCLUSION

In accordance with the foregoing, the Court **ADOPTS** the Magistrate Judge's R&R [115] and **DENIES** Defendant's Motions to Suppress [84, 86].

The trial in this action is hereby set to begin on Monday, November 27, 2017 at 9:30 A.M. in Courtroom 2107. The pretrial conference will be held on Wednesday, November 15, 2017 at 2:00 P.M. in Courtroom 2107. By noon on Monday, October 30, 2017, the parties are to file the following: motions *in limine* and proposed *voir dire* questions. By noon on Monday, October 30, 2017, the Government must file a brief summary of the indictment that the parties can rely on for *voir dire*. By noon on Monday, November 6, 2017, the parties are to file responses to motions *in limine* and any objections and to those items listed above.

Excludable time is allowed through November 27, 2017, pursuant to 18 U.S.C. § 3161 (h)(7)(A) and (B)(iv), to give counsel for Defendant and the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. The Court finds that the ends of justice served outweigh the best interest of the public and the Defendant in a speedy trial and are consistent with both the best interest of the public and individual justice in this matter.

**IT IS SO ORDERED** this 14 th day of September, 2017.

Leigh Martin May
**United States District Judge**